PLACE (RUSSELL v.). See Case No. 12,161.

PLACE (SEDGWICK v.). See Cases Nos. 12,619–12,623.

PLAINFIELD, The (BRUSH v.). See Case No. 2,058.

## Case No. 11,203.

### The PLANET.

[Brown, Adm. 124.] [1]

District Court, E. D. Michigan. April, 1864. [2]

COLLISION—VESSEL AT ANCHOR—ANCHOR WATCH.

1. A schooner lying at anchor with her sails up, in a channel 1,500 feet wide, was damaged by a steamer coming down the channel at the rate of 12 miles an hour, and endeavoring to pass between the schooner and another vessel which lay about 400 feet ahead of her. *Held*, that the schooner had a right to lie where she did with her sails up, though there was a puffy wind.

[Cited in The Worthington and Davis, 19 Fed. 838; The Ogemaw, 32 Fed. 924.]

2. No anchor watch was necessary in the day time.

3. The steamer was solely in fault for not giving the schooner a wider berth.

Libel for collision. The facts conceded and the facts proved to the satisfaction of the court were substantially these: The schooner Stella, of 176 tons burden, was pursuing her voyage from Buffalo to Milwaukee, when, for want of wind, she came to anchor at midday, in the St. Clair river, above Port Huron, about 400 feet from the American shore, the river being at that point about 1,500 feet wide, and the current nearly five miles an hour. The Stella was in company with another sail vessel called the Elida, and the wind, which had been rather light all the morning, failed them at noon, and died away altogether; so that at this time and place, neither vessel being able to proceed up the current, they came to anchor, the Elida some 400 feet in advance of the Stella, and about the same distance from the American shore. The Stella kept her mainsails up, as her anchorage was but a short distance from the lake, and she had every reason to expect being towed by the Sarnia, which was then gone to the Elida to attach her first to her tow. The river is about 1,500 feet wide at this place, and there was ample space for vessels ascending or descending to pass on either side of the Stella. While thus at anchor, the steamer Planet came down the river at a speed of twelve or thirteen miles an hour, heading down stream, passing on the starboard side of the Elida, and attempting to run between the Stella and the American shore, ported her helm, and with the power of the current and steam, in a few minutes after passing the Elida, ran into the Stella, occasioning the damage alleged to both vessels.

1 [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

2 [Affirmed by circuit court; case unreported.]

W. A. Moore, for the Stella.

J. S. Newberry, for the Planet.

WILKINS, District Judge. Many witnesses swear to the wind being puffy and capricious, when but a few minutes before the collision the Elida and Stella were forced to come to anchor because the wind had died away. Another witness, on board the Forrester, swears that he had seen from her deck the Stella ranging off and on all the morning, when it is unquestionable, and not denied, that both the Elida and Stella only reached their anchorage at noon. Some of the witnesses swear that the Stella swung and sheered while at anchor about one hundred and sixty feet, a statement certainly inconsistent with the admitted fact of the length of her chain and weight of her anchor. Such a breeze as would make her thus range was sufficient to take her at once to Lake Huron, without the aid and expense of a tug. The speed of the Planet, her size, and the consequent undulation of the water, forbade accuracy of observation by those on her decks, and would mislead the judgment of the most truthful.

On the part of the Planet, it is urged that the Stella was at fault, in being at anchor, with her sails up, and neglecting a watch at her helm. It was midday; the channel broad and deep—on the starboard and larboard sides—to the east and the Canadian shore, 1,000 feet, and to the American, more than 300 feet, with sufficient depth of water to within a few feet of the shore; the anchorage was only for a short time, and no necessity existed for a watch at the helm, no more than for a light at her bow, or for a watch and light when lying at dock in port. Such a requisite presupposes powerful steamers to be without government, and that sailing vessels must keep a lookout when at anchor in a channel 1,500 feet wide, in order to protect descending steamers from being run into by sheering.

She had a right to keep her sails up when at anchor, under the circumstances proved. Having ample room to pass on either side, if there was wind to make the Stella sheer, the Planet was, nevertheless, to take that into consideration, and avoid passing the Stella so near as to render a collision possible. A steamer must avoid a sail vessel when both are under weigh; much more should a sail vessel at anchor be avoided, even on the eve of departure, and when her sails are up. It is no excuse for the steamer—with ample space safely to pass—that the wind was puffy, and the anchored vessel so sheered as to run into the steamer, or cause the steamer to run into her. The fault is in the steamer; and the sheering of the sail vessel, whether caused by undulation or wind, does not shift the fault from the steamer to the sail vessel.

It is unnecessary to attempt to reconcile the conflict in the testimony as to the fact of sheering. Fish and Cottrel of the Forrester, swear to the ranging, and the crew of the Planet to the same fact—with much probability, as the undulation would cause some ranging, though not to the extent that the crew fancied, in their rapid flight down a current of five miles an hour, while the captain and crew of the Stella, and the master and mate of the Elida testify to the contrary, Merrill, the mate of the Stella, stating positively that he was on deck all the time the Stella lay at anchor, until the collision, except for a few minutes at dinner, when he was told the Planet was coming, and that the Stella lay all the time steady at anchor. A sailing vessel at anchor even with sails up, and about to start, must be carefully avoided by a steamer coming into port; and it constitutes no defence to the latter that the former sheered, so as to cause collision. The steamer must keep off. There is no doubt that there was some ranging in the Stella, for a short period, on the rapid approach of so large a vessel as the Planet, causing a corresponding undulation. But this ranging cannot be attributed to the wind. And whether she ranged or not, while at anchor, under the sudden puffs of wind playing on her sails, the Planet was bound to guard against the exigency, by taking a wide berth, either to the larboard or starboard. This she could do. This she ought to have done. Where there is ample sea room, a steamer must avoid a sail vessel at anchor, or under weigh, and the law imposes no duty upon the latter when anchored, as to an approaching steamer in daylight. At night, the usual light and watch are necessary, but in the day time, all the duty to avoid a collision is with the steamer. It is not allowable for the latter to run any risk as to the anchored vessel, or attempt the experiment of a dangerous proximity. Sailing vessels, especially when at anchor, enjoy the broad protection of the law.

The fact has been established that with reference to the Elida, the Stella lay inside, and not outside, and not at a greater distance than five or six hundred feet below.

This fact being fixed in the judgment of the court, the fault in the Planet is fixed. With space abundant on either side, it is inexcusable that she ported on passing the Elida, a movement that brought her inevitably across the bows of the Stella. If it was desirable to hug the American shore, she ought to have done so before she reached the Elida, and not after she had passed that vessel. Had she done so, the collision would have been avoided.

Decree for libellant.

On appeal to the circuit court, this case was affirmed. [Case unreported.] But see, as to necessity of anchor watch, The Masters [Case No. 9,267].